# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

WILLIAM BRANCACCIO,[1]                    No. 2:16-CV-2479-CMK

      Plaintiff,

   vs.                                          MEMORANDUM OPINION AND ORDER

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

      Plaintiff, who is proceeding with retained counsel, brings this action under

42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security.

Pursuant to the written consent of all parties, this case is before the undersigned as the presiding

judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending

before the court are plaintiff's motion for summary judgment (Doc. 24) and defendant's cross-

motion for summary judgment (Doc. 28).

---

[1]    Claimant's father, William Brancaccio, has notified the court of the death of his son, Erik Brancaccio. See Doc. 34-1. Pursuant to Federal Rule of Civil Procedure 25(a)(1) the motion (Doc. 34) to substitute real party in interest William Brancaccio as plaintiff in this matter is granted.

# I. PROCEDURAL HISTORY

Claimant applied for social security benefits on October 24, 2012. In the application, claimant claimed that disability began on December 31, 2009. Claimant's claim was initially denied. Following denial of reconsideration, claimant requested an administrative hearing, which was held on June 9, 2014, before Administrative Law Judge ("ALJ") Odell Grooms. In a February 2, 2015, decision, the ALJ concluded that claimant was not disabled based on the following relevant findings:

    1.    The claimant had the following severe impairment(s): cervical and lumbar degenerative disc disease, and bilateral shoulder rotator cuff tendinitis;

    2.    The claimant did not have an impairment or combination of impairments that met or medically equaled an impairment listed in the regulations;

    3.    The claimant had the following residual functional capacity: the claimant could perform sedentary work; he could occasionally climb ramps and stairs; could never climb ladders, ropes, or scaffolds; could sit for a total of 6 hours in an 8-hour workday; can sit for 1 hour without interruption; can stand and/or walk for a total of 4 hours in an 8-hour workday; could stand and/or walk for 30 minutes without interruption; could occasionally stoop and kneel; can never crouch or crawl; could frequently reach overhead and can frequently push and pull with the bilateral upper extremities; could frequently operate foot controls with the bilateral lower extremities; avoid concentrated exposure to humidity and wetness; avoid all exposure to extreme cold and to extreme heat; could frequently tolerate pulmonary irritants and vibrations; and

    4.    Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant could have performed.

After the Appeals Council declined review on August 18, 2016, this appeal followed.


# II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521

(9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to

support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole,

including both the evidence that supports and detracts from the Commissioner's conclusion, must

be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones

v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's

decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

findings, or if there is conflicting evidence supporting a particular finding, the finding of the

Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

Therefore, where the evidence is susceptible to more than one rational interpretation, one of

which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

Cir. 1988).

### III.  DISCUSSION

In his motion for summary judgment, plaintiff argues: (1) the ALJ failed to

properly evaluate the medical opinions; (2) the ALJ erred in failing to find that claimant's lumbar

impairment met or medically equaled Listings 1.04A and 1.04C; and (3) the ALJ failed to

articulate sufficient reasons for rejecting lay witness evidence.

#### A.        Evaluation of Medical Opinions

The weight given to medical opinions depends in part on whether they are

proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d

821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating

professional, who has a greater opportunity to know and observe the patient as an individual,

than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285

1    (9th Cir. 1996); <u>Winans v. Bowen</u>, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given

2    to the opinion of a non-examining professional.  <u>See</u> <u>Pitzer v. Sullivan</u>, 908 F.2d 502, 506 & n.4

3    (9th Cir. 1990).

4             In addition to considering its source, to evaluate whether the Commissioner

5    properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are

6    in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an

7    uncontradicted opinion of a treating or examining medical professional only for "clear and

8    convincing" reasons supported by substantial evidence in the record.  <u>See</u> <u>Lester</u>, 81 F.3d at 831.

9    While a treating professional's opinion generally is accorded superior weight, if it is contradicted

10   by an examining professional's opinion which is supported by different independent clinical

11   findings, the Commissioner may resolve the conflict.  <u>See</u> <u>Andrews v. Shalala</u>, 53 F.3d 1035,

12   1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be

13   rejected only for "specific and legitimate" reasons supported by substantial evidence.  <u>See</u> <u>Lester</u>,

14   81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of

15   the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

16   finding.  <u>See</u> <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

17   legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

18   professional.  <u>See</u> <u>Lester</u>, 81 F.3d at 830-31.  The opinion of a non-examining professional,

19   without other evidence, is insufficient to reject the opinion of a treating or examining

20   professional.  <u>See</u> <u>id.</u> at 831.  In any event, the Commissioner need not give weight to any

21   conclusory opinion supported by minimal clinical findings.  <u>See</u> <u>Meanel v. Apfel</u>, 172 F.3d 1111,

22   1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion);

23   <u>see also</u> <u>Magallanes</u>, 881 F.2d at 751.

24   / / /

25   / / /

26   / / /

4

1          Regarding claimant's physical limitations, the ALJ relied on the opinions of

2   examining consultative physician, Dale Van Kirk, M.D., see CAR at Exhibit 23F, as well as the

3   opinions of state agency reviewing doctors Robert Redd, M.D., and Alicia Blando, M.D., see id.

4   at Exhibits 3A, 4A, 5A, and 6A.[2]  As to these doctors, the ALJ stated:

5           Consultative physician, Dale Van Kirk, M.D., opined that the claimant
            could lift and carry twenty pounds occasionally and ten pounds frequently,
6           could sit for six hours in an eight-hour day, could stand and walk for four
            hours in an eight-hour day, could frequently reach overhead with the
7           bilateral upper extremities, could occasionally climb ramps and/or stairs,
            could never climb ladders, ropes or scaffolds, could continuously balance,
8           could occasionally stoop and kneel, could never crouch and/or crawl,
            could occasionally tolerate humidity and wetness, could frequently tolerate
9           dust, odors, fumes, pulmonary irritants and vibrations, and could not
            tolerate temperature extremes (Ex. 23F).  Dr. Van Kirk's opinion is
10          persuasive because it is based upon a physical examination and it is
            consistent with the record as a whole.  Thus, Dr. Van Kirk's opinion is
11          given considerable weight.

12          State agency reviewing physicians, Robert Redd, M.D., and Alicia Blando,
            M.D., opined that the claimant could lift and carry twenty pounds
13          occasionally and ten pounds frequently, could sit for six hours in an eight-
            hour day (Ex. 3A; 4A; 5A; 6A).  The opinions of Drs. Redd and Blando
14          are given substantial weight as they are consistent with the findings of the
            examining physician, Dr. Van Kirk.
15
            However, Drs. Redd and Blando further opined that the claimant could
16          stand and walk for six hours in an eight-hour day (Ex. 3A; 4A; 5A; 6A).
            This portion of the opinions of Drs. Redd and Blando are given little
17          weight because evidence introduced at the hearing level suggests
            additional limitations.
18
            Regarding claimant's mental limitations, the ALJ relied on the opinions of
19
    consultative psychologist, Alex Kettner, Psy.D., state agency reviewing physician Jay Rankin,
20
    M.D., and state agency reviewing psychologist, Timothy Schumacher, Ph.D.  Dr. Kettner opined
21
    that claimant had no severe psychological limitations, see CAR at Exhibit 11F, and Drs. Rankin
22
    and Schumacher agreed, see id. at Exhibits 3A, 4A, 5A, and 6A.  The ALJ gave these doctors'
23
    opinions "substantial weight" because they are "consistent with the medical evidence, which
24

25
         [2]    Citations are to the Certified Administrative Record lodged on April 25, 2017
26  (Doc. 13).

1  revealed minimal complaints and no significant mental health treatment."

2       Plaintiff argues that the ALJ failed to consider the opinions of treating physician

3  Dr. McAlpine regarding migraine headaches.  Plaintiff also argues that the ALJ failed to consider

4  the opinions of treating sources at Kaiser regarding mental impairments.  Plaintiff presents no

5  arguments with respect to the ALJ's reliance on the opinions of Drs. Van Kirk, Redd, Blando,

6  Kettner, Rankin, or Schumacher.

7       1.     Dr. McAlpine

8       Plaintiff argues that the ALJ failed to consider "a 1/29/13 migraine headache form

9  completed by Mr. Brancaccio's pain management specialist Dr. McAlpine."  Citing CAR 1261,

10  plaintiff states that this form "describes daily migraine headaches lasting two to three hours,

11  interfering with the ability to work, for which multiple medications are prescribed with poor

12  response. . . ."  According to Dr. McAlpine's January 29, 2013, form, claimant suffered from

13  daily "global headaches," which lasted between two and three hours and were accompanied by

14  photophobia, phonophobia, and throbbing/pulsating sensations.  Dr. McAlpine indicated that

15  claimant's headaches had not required hospital visits within the 12 months before his report.

16  Finally, Dr. McAlpine stated that claimant's headaches interfered with his ability to work.

17       A review of Dr. McAlpine's report does not reflect that he rendered any specific

18  opinions relating to claimant's ability to perform work-related activities.  While Dr. McAlpine

19  generally opined that claimant was unable to work due to headaches, he does not state why or

20  cite to any objective findings supporting the opinion.  In any event, the ultimate question of

21  disability is reserved to the Commissioner.  Because Dr. McAlpine did not render any opinions to

22  consider, the ALJ did not err by failing to discuss Dr. McAlpine's report.

23  / / /

24  / / /

25  / / /

26  / / /

1      2.      Kaiser

2             Plaintiff argues that the ALJ failed to consider "the treating Kaiser psychiatric

3  record. . . which included global assessment of functioning in the 'serious' 41-50 range and

4  diagnosis of post-concussion syndrome."  Citing CAR 1597, plaintiff states that the "treating

5  evidence" shows mood and anxiety disorders.  As with Dr. McAlpine, plaintiff has not identified

6  any opinions regarding claimant's functional capacity that the ALJ should have considered, and a

7  review of the record does not reflect that providers at Kaiser rendered any such opinions.

8      **B.      Listing 1.04**

9             The Social Security Regulations "Listing of Impairments" is comprised of

10  impairments to fifteen categories of body systems that are severe enough to preclude a person

11  from performing gainful activity.  Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990); 20

12  C.F.R. § 404.1520(d).  Conditions described in the listings are considered so severe that they are

13  irrebuttably presumed disabling.  20 C.F.R. § 404.1520(d).  In meeting or equaling a listing, all

14  the requirements of that listing must be met.  Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir.

15  1985).

16             As to the Listings, the ALJ stated:

17             . . .[T]he claimant's back and neck impairments do not satisfy any of the
              relevant musculoskeletal listings as he retains the ability to ambulate
18             effectively.  [¶] . . .[T]he claimant's shoulder impairment does not
              medically equal any of the relevant musculoskeletal listings in 1.00, et
19             seq., as there is no evidence that the claimant is precluded from
              performing fine and gross movements effectively with the upper
20             extremities.

21  According to plaintiff, the ALJ failed to "comprehend the severity of Erik Brancaccio's lumbar

22  disc condition (or the reason for it)."[3]  Plaintiff argues that the ALJ erred by not specifically

23  considering Listings 1.04A (nerve-root compression) and 1.04C (spinal stenosis).  In this regard,

24

25             [3]      Plaintiff does not present any argument relating to the ALJ's analysis of
   claimant's shoulder impairment or his ability to perform fine and gross movements effectively
26  with the upper extremities.

1  plaintiff specifically argues that the ability to "ambulate effectively" is not a factor under Listing

2  1.04A and, by citing this sole factor, the ALJ failed to provide a reason applicable to Listing

3  1.04C. Finally, plaintiff argues that, contrary to the ALJ's finding that claimant was able to

4  "ambulate effectively," the record shows that claimant was only able to "slowly" "walk a block at

5  a reasonable pace on rough or uneven surfaces."

6          To meet or equal Listing 1.04A, the claimant must produce evidence of

7  compromise of a nerve root with nerve root compression characterized by motor loss

8  accompanied by sensory or reflex loss and, if there is involvement of the low back, positive

9  straight leg raising test. See Listing 1.04A. As defendant notes, the ALJ was not required to

10 consider the applicability of this listing because claimant failed to produce any evidence

11 satisfying the listing's requirements. Contrary to suggesting the applicability of Listing 1.04A,

12 the record shows that claimant does not meet this listing. Specifically, Dr. Van Kirk, who

13 examined claimant, observed negative straight leg test in both the sitting and supine positions,

14 full motor strength, and intact senses in claimant's lower extremities. See CAR 1611-12.

15         Listing 1.04C is met by evidence showing lumbar spinal stenosis manifested by

16 chronic nonradicular pain and weakness and resulting in the inability to ambulate effectively.

17 See Listing 1.04C. The ability to ambulate effectively is specifically defined in the regulations as

18 "capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out

19 activities of daily living." Listing 1.00B(2)(b)(2). To ambulate effectively, the claimant must

20 "have the ability to travel without companion assistance to and from a place of employment or

21 school." Id. "Ineffective ambulation is defined generally as having insufficient extremity

22 functioning. . .to permit independent ambulation without the use of a hand-held assistive

23 device(s) that limits the functioning of both upper extremities." Listing 1.00B(2)(b)(1).

24 / / /

25 / / /

26 / / /

8

1    In this case, Dr. Van Kirk completed a functional assessment form and placed a

2  check mark half way between "yes" and "no" next to the question about claimant's ability to

3  "walk a block at a reasonable pace on rough or uneven surfaces," and added "slowly." See CAR

4  1619. From this, plaintiff concludes that claimant could not ambulate effectively. The court

5  does not agree. Plaintiff concedes that claimant "could 'ambulate effectively' in the sense that

6  claimant wasn't using 'a walker, two crutches, or two canes.'" Additionally, Dr. Van Kirk opined

7  that claimant could slowly walk a block over uneven surfaces. Finally, there is no evidence that

8  claimant was ever prescribed the use of an assistive device for ambulation.

9          Because claimant failed to present evidence of motor loss accompanied by sensory

10 or reflex loss and positive straight leg raising test, the ALJ was not required to consider Listing

11 1.04A. The ALJ properly found that Listing 12.04C does not apply in this case because the

12 record shows that claimant retained the ability to ambulate effectively.

13       **C.      Lay Witness Evidence**

14          In determining whether a claimant is disabled, an ALJ generally must consider lay

15 witness testimony concerning a claimant's ability to work. See Dodrill v. Shalala, 12 F.3d 915,

16 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e). Indeed, "lay

17 testimony as to a claimant's symptoms or how an impairment affects ability to work is competent

18 evidence . . . and therefore cannot be disregarded without comment." See Nguyen v. Chater, 100

19 F.3d 1462, 1467 (9th Cir. 1996). Consequently, "[i]f the ALJ wishes to discount the testimony

20 of lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at

21 919. The ALJ may cite same reasons for rejecting plaintiff's statements to reject third-party

22 statements where the statements are similar. See Valentine v. Commissioner Soc. Sec. Admin.,

23 574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's

24 testimony, which was similar to the claimant's, for the same reasons given for rejection of the

25 claimant's complaints).

26 ///

As to the lay witness evidence, the ALJ stated:

> The claimant's sister, Dawn Brancaccio, submitted a Third Party Function Report where she alleges that the claimant has difficulty sleeping, performing personal care tasks, requires reminders to take [sic] perform person hygiene tasks, requires assistance to perform household chores, has difficulty lifting, standing, walking, sitting, climbing stairs, kneeling, squatting, reaching, bending, remembering, concentrating, completing tasks, understanding, following instructions, getting along with others, and adapting to change (Ex. 17E). Ms. Brancaccio's lay opinion cannot be afforded significant weight because it, like the claimant's, is simply not consistent with the preponderance of the opinions and observations by medical doctors in this case.

> During the hearing William Brancaccio testified that he has had to assist the claimant into the house because they [sic] claimant was unable to walk by himself and that he had to help lift the claimant into his bed (Testimony). Mr. Brancaccio's lay opinion cannot be afforded significant weight because it is contrary to the weight of the evidence.

The ALJ outlined the following medical evidence which he found to be inconsistent with the lay witness evidence:

> . . .[P]hysical examination revealed no swelling or ecchymosis, normal range of motion and strength, and no evidence of focal neurological deficits (Ex. 1F/3). CT studies of the lumbar spine revealed minimal spinal canal narrowing (Ex. 4F/7). Moreover, Electrodiagnostic studies failed to reveal signs of electrical instability (Ex. 13F). Finally, recent medical records revealed that the claimant walked with a normal gait, demonstrated normal strength in the lower extremities, and displayed only mildly limited range of motion in the lumbar spine (Ex. 20F/68).

> . . . [D]uring the consultative examination, the claimant displayed full range of motion in the shoulders and there was no evidence of swelling, effusion, warmth, or deformity in the upper extremities (Ex. 23F/6). Consultative physician, Dr. Van Kirk also noted that the claimant was able to get on and off the examination table without difficulty, displayed grip strength commensurate with motor strength, and could manipulate a pen, approximate finger, and make a fist (Ex. 23F/7). Furthermore, the office visit notes reflect numerous occasions on which the claimant did not complain about these impairments, which contrasts with the current claim of ongoing, disabling symptoms since the alleged onset date.

> . . .Other than primary care treatment and an initial psychiatric assessment, the record does not document any significant and/or continuing mental health care, counseling, or therapy. Moreover, the claimant presented to Dr. Kettner's evaluation with objective findings suggestive of the ability to perform a wide range of unskilled work (Ex. 11F).

///

1 The ALJ also noted that, despite claimant's allegations of totally disabling symptoms, the record

2 reveals no restrictions recommended by any treating source.

3 Plaintiff argues that the ALJ failed to articulate reasons for rejecting his own

4 testimony as well as statements from claimant's sister, Dawn Brancaccio. Plaintiff notes that the

5 ALJ rejected the lay witness evidence because it is inconsistent with the weight of the medical

6 evidence and adds: "This single reason given for rejecting two witnesses was not germane

7 because factually wrong." The court does not agree. Both lay witnesses stated that claimant is

8 unable to walk on his own. As discussed above, the objective evidence of record does not

9 support this claim. Specifically, Drs. Van Kirk, Redd, and Blando all opined that plaintiff could

10 walk without assistance while performing work-related activities.

11

12 **IV. CONCLUSION**

13 Based on the foregoing, the court concludes that the Commissioner's final

14 decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY

15 ORDERED that:

16       1.     Plaintiff's motion (Doc. 34) to substitute parties is granted;

17       2.     William Brancaccio is substituted for Erik Brancaccio as plaintiff in this

18 action;

19       3.     Plaintiff's motion for summary judgment (Doc. 24) is denied;

20       4.     Defendant's cross-motion for summary judgment (Doc. 28) is granted; and

21       5.     The Clerk of the Court is directed to enter judgment and close this file.

22

23 DATED: March 27, 2018

24 CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE

25

26